Hubert JOHNSON (Defendant Below),
Allegheny Mutual Casualty Company,
and Terry G. Robbins, Appellants,

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 79A04–9006–CR–291.

Court of Appeals of Indiana,
Fourth District.

Feb. 28, 1991.

Marcel Katz, Lafayette, for appellants.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Appellants, surety Allegheny Mutual Casualty Company and bondsman Terry G. Robbins, collectively Bondsmen, appeal from an order of late surrender fees of 50% of the $10,000 bail bond which they wrote for criminal defendant Hubert Johnson who failed to appear as scheduled for a hearing in Tippecanoe County Superior Court No. 2.

The Tippecanoe County Clerk sent notice, on June 22, 1989, to the Bondsmen of the court's order which directed them to surrender the Defendant.[1] Ind.Code 27–10–2–12(b) provides that, after the notice is mailed, the bondsman must produce the defendant or prove that the defendant's appearance was prevented by one of the three enumerated reasons, which includes incarceration in another jurisdiction. IC 27–10–2–12(c) provides a schedule for calculating the late surrender fee based upon the amount of time that has elapsed between notice and the bondsman's "compliance" with section (b).

On December 7, 1989, Bondsmen filed an affidavit with the court, signed by Major R. Worthington of the Tippecanoe County Sheriff's Department, stating that the Defendant was in the custody of the Dade County Sheriff's Department in Miami, Florida and had been there since October 5, 1989, awaiting the conclusion of extradition proceedings to Tippecanoe County. The court found that the bondsmen "complied" with IC 27–10–2–12(b) on December 7, 1989 (when they proved that Johnson was in custody in Florida). The court used that date as a basis for calculating the late surrender fee under IC 27–10–2–12(c).

1. Both parties acknowledge that according to the Clerk's "Certificate of Mailing" for each of the Appellants, the Clerk mailed out notice of the court's order on June 22, 1989, rather than June 20, 1989, as stated by the court.

Bondsmen argue that the trial court erred in 1) finding that the date of "compliance" with IC 27–10–2–12(b) was the date the bondsmen proved the Defendant did not appear due to his incarceration in another jurisdiction, and 2) calculating the late surrender fees under IC 27–10–2–12(c).

We affirm.

## DECISION

 Bondsmen argue that time of compliance with IC 27–10–2–12(b) is the happening of an enumerated event under IC 27–10–2–12(b)(2)(A) which prevented defendant's appearance rather than the time at which the surety proves the happening of the event. We disagree. As this court stated in *Economy Oil v. Indiana Department of State* (1975), 162 Ind.App. 658, 663, 321 N.E.2d 215, 218: "The bedrock rule of statutory construction is that a statute clear and unambiguous on its face need not and cannot be interpreted by a court."

In the instant case, IC 27–10–2–12(c) clearly sets up a late surrender fee schedule based upon the time of "compliance" with the terms of section (b). The terms of IC 27–10–2–12(b) are equally clear. The court applied the statute as it read at the time the bond was posted, before the July, 1989 modifications. IC 27–10–2–12 read, in pertinent part, as follows:

(b) The bondsman *must:*

(1) produce the defendant; or

(2) prove:

(A) that the appearance of the defendant was prevented:

(i) by the defendant's illness or death;

(ii) because the defendant was at the scheduled time of appearance or currently is in custody of the United States, a state, or a political subdivision thereof; or

(iii) because the required notice was not given; and

(B) the defendant's absence was not with the consent or connivance of the sureties.

(c) *If the bondsman does not comply with the terms of the Subsection (b)* within ninety (90) days of the mailing of notice required under Subsection (a)(2), a late surrender fee shall be assessed against the bondsman as follows:

(1) If compliance occurs more than ninety (90) days but not more than one hundred twenty (120) days after the mailing of notice, the late surrender fee is twenty percent (20%) of the face value of the bond.

(2) If compliance occurs more that one hundred twenty (120) days but not more that one hundred fifty (150) days after the mailing of notice, the late surrender fee is thirty percent (30%) of the face value of the bond.

(3) *If compliance occurs more that one hundred fifty (150) days but not more that one hundred eighty (180) days after the mailing of notice, the late surrender fee is fifty percent (50%) of the face value of the bond.* (emphasis added).

IC 27–10–2–12(b) unambiguously provides that the bondsman must produce the defendant or *prove* that the appearance of the defendant was prevented by one of the three enumerated events. IC 27–10–2–12(c). Therefore, compliance with section (b), under IC 27–10–2–12(c), means production or *proof,* not the happening of an enumerated event. Accordingly, in the case at bar, the date of compliance with section (b) was December 7, 1989—the date that the Bondsmen *proved* that the defendant was in custody in Florida. Because notice was sent on June 22, 1989, and compliance with section (b) did not occur until December 7, 1989, we find that the court correctly used the late surrender schedule by choosing section (c)(3) and by assessing a 50% late surrender fee.

We also add that the statutory intent is to encourage diligence by either producing the defendant or proving that the defendant is unavailable for a statutorily provided reason.

For the foregoing reasons, we affirm.

CHEZEM and BUCHANAN, JJ., concur.