LAKE COUNTY CLERK'S OFFICE, Anna Anton as Lake County Clerk Officially, Lake County Sheriff's Dept., John Buncich as Lake County Sheriff Officially, Lake County Correctional Dept., Unknown Correctional Officers, Lake County, Indiana and the State of Indiana, Appellants–Defendants,

v.

Herbert SMITH, Jr., and Charles Zacek, Appellees–Plaintiffs.

No. 45S00–0102–CV–105.

Supreme Court of Indiana.

April 22, 2002.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

Eric O. Clark, Robert L. Lewis & Associates, Gary, IN, Attorney for Appellee.

James E. Foster, Michael N. Pagano, Funk & Foster, Hammond, IN, Kerry C. Connor, Munster, IN, Attorneys for Amicus Curiae Criminal Defense Section of the Lake County Bar Association.

RUCKER, Justice.

Under Indiana's statutory bail scheme, a trial court can admit a defendant to bail by requiring the defendant to execute a bail bond by using a bail bondsman or by depositing ten percent of the bail amount in cash with the clerk of the trial court. In this case the trial court declared this scheme unconstitutional under both the federal and state constitutions because it treats bail bondsmen differently from defendants who post ten percent cash bonds. Concluding that Indiana's bail scheme is not unconstitutional, we reverse the judgment of the trial court.

## Background

### Introduction To Indiana Bail Law

■ The availability of bail is guaranteed for all offenses except murder and treason by Article I, Section 17 of the Indiana Constitution. The purpose of bail is "to ensure the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect." *Hobbs v. Lindsey*, 240 Ind. 74, 162 N.E.2d 85, 88 (1959) (quotation omitted). To that end, the legislature has adopted a comprehensive statutory bail scheme found throughout various chapters of Title 27 and Title 35 of the Indiana Code. Among other things, this scheme provides a variety of ways in which a defendant can remain free pending trial. For example, Indiana Code section 35–33–8–3.2 provides that a court may "admit a defendant to bail" and impose any of the following conditions to ensure the defendant's presence at any stage of the legal proceedings:

(1) Require the defendant to:

 (A) execute a bail bond with sufficient solvent sureties;

 (B) deposit cash or securities in an amount equal to the bail;

 (C) execute a bond secured by real estate in the county, where thirty-three hundredths (0.33) of the true tax value less encumbrances is at least equal to the amount of the bail;

 (D) post a real estate bond.

(2) Require the defendant to execute a bail bond by depositing cash or securities with the clerk of the court in an amount not less than ten percent (10%) of the bail. . . .

. . .

Ind.Code § 35–33–8–3.2(a). This case involves only bail bonds executed under subsections (a)(1)(A) and (a)(2). *See* Br. of Appellee at 1.

A "bail bond" is a bond executed by a person who has been arrested for the commission of an offense for the purpose of ensuring: (1) the person's appearance at the appropriate legal proceeding; (2) another person's physical safety; or (3) the safety of the community. I.C. § 35–33–8–1. A bail bond executed under Indiana Code section 35–33–8–3.2(a)(1)(A) is most commonly used by defendants who use a bail bondsman, while a bail bond executed under Indiana Code section 35–33–8–3.2(a)(2) is most commonly used by defendants who post ten percent cash bonds. We explore each of these methods in more detail below.

### Defendants Who Use a Bail Bondsman

A defendant who executes a bail bond under Indiana Code section 35–33–8–3.2(a)(1)(A) uses a bail agent, commonly referred to as a bail bondsman. A "bail agent" is a person who has been approved by the Commissioner of the Department of Insurance and appointed by an insurer through a power of attorney to execute or countersign bail bonds for the insurer in connection with judicial proceedings for which the person receives a premium. I.C. § 27–10–1–4. A "premium" is the

amount of money the defendant pays the bail agent prior to the execution of the bail bond. I.C. § 27–10–1–8. The premium, which is usually ten percent of the bond, is for the bail agent's services. R. at 413. Even if the defendant appears as ordered by the court, he is not entitled to a return of the premium. *Id.* If the defendant fails to appear, then the court issues a warrant for the defendant's arrest and orders the bail agent and the surety[1] to surrender the defendant to the court immediately. I.C. § 27–10–2–12(a). The clerk of the court must mail a notice of this order to both the bail agent and the surety. *Id.*

Before 1985, the court was also required to order the bond forfeited when the defendant failed to appear as ordered. *See* I.C. § 35–4–5–12 (1982). However, the legislature recodified and amended this section in 1985. Pub.L. No. 261–1985, § 12, 1985 Ind. Acts 2034–35. In addition to removing the forfeiture requirement, the amendments provided that the bail agent or surety must:

(1) produce the defendant; or

(2) prove within three hundred sixty-five (365) days:

(A) that the appearance of the defendant was prevented:

(i) by the defendant's illness or death;

(ii) because the defendant was at the scheduled time of appearance or currently is in the custody of the United States, a state, or a political subdivision of the United States or a state; or

(iii) because the required notice was not given; and

(B) the defendant's absence was not with the consent or connivance of the sureties.

I.C. § 27–10–2–12(b). As things now stand, if the bail agent or surety does not comply with the above requirements, then the court shall assess a late surrender fee. The fee is graduated from twenty to eighty percent of the face value of the bond, depending on when the bail agent or surety complies with the statutory mandate. *See* I.C. § 27–10–2–12(c). And it is due on the date of compliance or 365 days after the clerk mails notice, whichever is earlier. *Id.* Additionally, the court shall order the bond forfeited only if the bail agent or surety fails to produce the defendant or show that the defendant's appearance was prevented within 365 days of the clerk's mailing of the notice. I.C. § 27–10–2–12(d). Even then, only twenty percent of the face value of the bond is forfeited. *Id.* Once forfeiture is ordered, the court shall immediately enter judgment. *Id.*

### *Defendants Who Post Ten Percent Cash Bonds*

A defendant who executes a bail bond under Indiana Code section 35–33–8–3.2(a)(2) deposits ten percent of the bail amount with the clerk of the court. If the defendant appears as ordered by the court, then the clerk returns to the defendant the deposit, minus administrative and other costs. I.C. §§ 35–33–8–3.2(a)(2), –7(f). Before 1990, when a defendant failed to appear, the court issued a warrant for the defendant's arrest and ordered the bond forfeited. I.C. § 35–33–8–7(a) (1988). Although this is still true as a general proposition, the legislature has made some changes.

---

1. A surety is any person who is qualified as an insurer and represented by a bail agent who agrees to pay the bond in the event the defendant fails to appear in court at the scheduled date and time. I.C. §§ 27–10–1–10, –2–4(1).

In February 1990, this Court addressed the timing of bond forfeiture in *O'Laughlin v. Barton,* 549 N.E.2d 1040 (Ind.1990). In that case, we held that a cash bond the defendant deposited with the clerk was not subject to garnishment for a civil judgment obtained by the victim of the crime because the court should have forfeited the bond upon the defendant's failure to appear, leaving nothing for the victim to garnish. *Id.* at 1042. While *O'Laughlin* was pending on petition for rehearing in this Court, the legislature amended Indiana Code section 35–33–8–7. These amendments, which became effective March 20, 1990, require a delay in forfeiture under narrow circumstances. Pub.L. No. 36–1990, §§ 7, 15, 1990 Ind. Acts 1257, 1262. Those circumstances are that when the court receives written notice of a pending civil action or unsatisfied judgment against the defendant arising out of the same transaction or occurrence that formed the basis of the criminal case, the court may not order funds deposited with the clerk forfeited, as it had previously been required to do. I.C. § 35–33–8–7(b). Rather, the court shall order the deposited funds to be held by the clerk. *Id.* If there is an entry of final judgment in favor of the plaintiff in the civil action, then the court shall order payment of all or any part of the deposit to the plaintiff as is necessary to satisfy the judgment. *Id.* The court shall then order forfeited the deposit, if any, as well as the bond. *Id.*

### Facts and Procedural History

Herbert Smith and Charles Zacek (collectively referred to as "Bondsmen") are bail agents licensed in the State of Indiana. For several years, Bondsmen have posted bail bonds for numerous defendants in Lake County. The events giving rise to this action are as follows. Smith posted a bail bond in the criminal division of the Lake County Superior Court for Sheree Parker–Robinson in the amount of $3000 in November 1996 and for Valerie McCutchen in the amount of $10,000 in February 1997. Parker–Robinson and McCutchen failed to appear. However, because Smith surrendered them to the court within 365 days, the court only ordered late surrender fees totaling $2600. Likewise, Zacek posted a bail bond in the criminal division of the Lake County Superior Court for John Gorzcya in the amount of $10,000 in April 1997. Gorzcya also failed to appear, but Zacek was not able to surrender him to the court within 365 days. As a result, the court ordered forfeiture and late surrender fees totaling $10,000.

On November 22, 1999, Bondsmen filed a complaint for temporary restraining order, permanent injunction, and declaratory judgment against the State of Indiana, Lake County, the Lake County Clerk's Office, the Lake County Sheriff's Department, the Lake County Corrections Department, and Unknown Named Correctional Officers (collectively referred to as "the State"). Bondsmen contended that Indiana's statutory bail scheme was unconstitutional under the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution. The trial court issued a temporary restraining order prohibiting the State from admitting defendants to bail under Indiana Code section 35–33–8–3.2. R. at 37. After conducting a hearing, the trial court declared Indiana's statutory bail scheme unconstitutional and permanently enjoined the State from admitting defendants to bail under Indiana Code section 35–33–8–3.2. R. at 176. The trial court later stayed the permanent injunction pending appeal. R. at 211. The State appealed, and this Court accepted jurisdiction pursuant to Indiana Appellate Rule 4(A)(1)(b).

## Discussion

Bondsmen contend that Indiana's statutory bail scheme is unconstitutional under both the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause of the Indiana Constitution. This is so, according to Bondsmen, because the scheme treats bail agents differently from defendants who post ten percent cash bonds. More specifically, they argue that when a defendant fails to appear, bail agents are subject to forfeiture and late surrender fees while defendants who post ten percent cash bonds are not.

### I. Equal Protection Clause

The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "does not reject the government's ability to classify persons or 'draw lines' in the creation and application of laws, but it does guarantee that those classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals." *Phelps v. Sybinsky*, 736 N.E.2d 809, 818 (Ind.Ct.App.2000) (quotation omitted), *trans. denied.* In assessing a claim under the Equal Protection Clause, our first inquiry involves the applicable level of scrutiny. *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 236 (Ind. 1997). Laws that involve a suspect classification and those that burden the exercise of a fundamental right receive the strictest scrutiny. *Shepler v. State*, 758 N.E.2d 966, 969 (Ind.Ct.App.2001), *trans. denied.* In order to survive strict scrutiny, a state action must be a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. *Id.* Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis test. *Carlberg*, 694 N.E.2d at 236. This test merely requires that the statute be rationally related to a legitimate governmental purpose. *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 763 (Ind.2001); *Carlberg*, 694 N.E.2d at 236.

Bondsmen concede they are not members of a suspect class and that a fundamental right is not involved. Therefore, the State need only show that the statute bears a rational relationship to a legitimate state interest. Bondsmen also concede that the State has "a legitimate interest in ensuring that persons for whom bail has been posted appear at court when scheduled." R. at 133. However, they contend that the State does not further this interest by subjecting bail agents, and not defendants who post ten percent cash bonds, to forfeiture and late surrender fees when defendants fail to appear. *Id.*

We first observe that contrary to Bondsmen's contention, defendants who post ten percent cash bonds are subject to forfeiture of the full amount of the bond if they fail to appear. Unless there is a pending civil action or unsatisfied judgment against the defendant, when a defendant fails to appear, the court "shall [ ] order the remainder of the deposit, if any, and the bond forfeited." I.C. § 35-33-8-7(b).

This then leaves us with Bondsmen's contention that the State does not further its legitimate interest of ensuring the appearance of defendants at judicial proceedings by subjecting bail agents, and not defendants who post ten percent cash bonds, to late surrender fees if defendants fail to appear. On this point the State responds that the unequal treatment accorded bail agents and defendants posting ten percent cash bonds is rationally related to the State's legitimate interest in ensuring the appearance of defendants at judicial proceedings. We agree.

Unlike defendants who post ten percent cash bonds, bail agents are in the business of posting bonds for profit and consequently are heavily regulated by the Department of Insurance. *See* I.C. § 27–10–1–1 *et seq.* Further, a bail agent gets to keep the entire premium a defendant pays, even if the defendant appears as ordered by the court. As such, the premium itself does not serve as an incentive for the bail agent to ensure the appearance of the defendant. Rather, our legislature has provided that late surrender fees serve as the bail agent's incentive. The sooner a bail agent produces a defendant who has failed to appear, the less late surrender fees the bail agent must pay. I.C. § 27–10–2–12(c). By contrast, defendants who post ten percent cash bonds do not need the threat of late surrender fees to ensure their appearance because: (1) they stand to lose the full amount of the bond if they fail to appear, I.C. § 35–33–8–7(b); and (2) if they do appear, the clerk returns to them the deposit, minus administrative and other costs. I.C. §§ 35–33–8–3.2(a)(2), –7(f). Both of these conditions serve as a defendant's incentive to appear.

 Every statute stands before us clothed with the presumption of constitutionality. *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1037 (Ind.1998). The party challenging the constitutionality of the statute has the burden to rebut this presumption, and all reasonable doubts must be resolved in favor of the statute's constitutionality. *Id.; In re Tina T.,* 579 N.E.2d 48, 56 (Ind.1991). When a statute can be construed so as to support its constitutionality, we must adopt such a construction. *Tina T.,* 579 N.E.2d at 56. In this case we conclude that Indiana's statutory bail scheme is rationally related to the State's interest in ensuring the presence of defendants at judicial proceedings. Accordingly, Bonds-

men have failed to carry their burden of proving that Indiana's statutory bail scheme violates the Equal Protection Clause of the United States Constitution.

## II. *Privileges and Immunities Clause*

 The Privileges and Immunities Clause of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. I, § 23. This provision, which is applied and interpreted independent of the Equal Protection Clause, imposes two requirements upon statutes that create classifications and either grant privileges or impose burdens: "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." *Martin v. Richey,* 711 N.E.2d 1273, 1280 (Ind.1999) (quotation omitted). In determining whether a statute complies with or violates Article I, Section 23, courts must exercise substantial deference to legislative discretion. *Id.*

In this case Bondsmen challenge Indiana's statutory bail scheme only under the disparate treatment prong. Similar to their equal protection challenge, they contend that the scheme creates different classes and that the differences between the classes do not justify subjecting only bail agents to late surrender fees.

We first observe that it could be argued that bail agents are treated better under Indiana's statutory bail scheme than defendants who post ten percent cash bonds. With respect to forfeiture, if a defendant who posts a ten percent cash bond fails to appear, the court orders the full amount of

the bond forfeited. I.C. § 35–33–8–7(b). This is so even if the defendant later appears as ordered by the court. In contrast, bail agents have a 365–day window in which to produce the defendant before the court even orders forfeiture. I.C. § 27–10–2–12(d). With respect to late surrender fees, even though bail agents and defendants who post ten percent cash bonds are treated differently, the outcome for bail agents is the same or better. For example, if a defendant who posts a ten percent cash bond fails to appear, although he is not subject to late surrender fees, he forfeits 100% of the bond. I.C. § 35–33–8–7(b). Likewise, if a defendant who uses a bail agent fails to appear and the bail agent is unable to surrender him within 365 days, the bail agent must pay 100% of the bond, 80% in late surrender fees and 20% in forfeiture fees. I.C. § 27–10–2–12(c)(5), (d). However, if the bail agent is able to prove within 365 days that the defendant's appearance was prevented by a statutory reason, the bail agent is not subject to any late surrender fees. I.C. § 27–10–2–12(b), (c). And even if the bail agent is unable to prove within 365 days that the defendant's appearance was prevented by a statutory reason, the most he must pay in late surrender fees is 80% of the bond. I.C. § 27–10–2–12(c).

In any event Bondsmen are correct that the scheme creates different classes. Those classes are bail agents who post bail bonds on behalf of defendants for profit and defendants who post ten percent cash bonds on their own behalf. And Bondsmen are also correct that bail agents and defendants who post ten percent cash bonds are treated differently. This is so, however, because without the threat of late surrender fees, bail agents have no incentive to ensure a defendant's appearance because they get to keep the entire premium regardless of whether the defendant appears.

We conclude that any disparate treatment between bail agents and defendants who post ten percent cash bonds is reasonably related to the inherent characteristics between the two unequally treated classes. As with their equal protection claim, Bondsmen have failed to carry their burden of proving that Indiana's statutory bail scheme violates Article I, Section 23 of the Indiana Constitution.

### Conclusion

We reverse the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.