Manuel GAETA, Defendant,

Roche Surety & Casualty, Appellant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–1011–CR–1196.

Court of Appeals of Indiana.

Sept. 13, 2011.

Transfer Denied Dec. 1, 2011.

Daniel J. Moore, Laszynski & Moore, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Roche Surety & Casualty ("Roche Surety") appeals from the trial court's order for late surrender fees of 80% of the $250,000 bond, which it posted for Manuel Gaeta ("Gaeta") who failed to appear for a court appearance in Tippecanoe Superior Court. Roche Surety raises the following restated issues:

I. Whether the trial court erred in finding that Roche Surety must pay a late surrender fee because it did not produce Gaeta or show proof of why his appearance was prevented until almost a year after notice was given; and

II. Whether the trial court abused its discretion in denying Roche Surety's request to waive the late surrender fee.

The State cross-appeals, raising the following issue:

III. Whether the trial court should have also forfeited 20% of the bond in addition to the 80% late surrender fees because Roche Surety failed to comply with subsection (b) of Indiana Code section 27–10–2–12.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On April 25, 2007, the State charged Gaeta with eight counts of dealing in methamphetamine and one count of conspiracy to commit dealing in methamphetamine, each as a Class A felony and set his bond at $500,000 surety. Two days later, the trial court reduced Gaeta's bond to $250,000 surety. On May 7, 2007, Roche Surety filed a surety bond in that amount guaranteeing Gaeta's future appearances in court, and Gaeta was released on bond thereafter.

On February 5, 2008, the State filed a motion requesting an order that Gaeta appear in the trial court, alleging that the State had received information that Gaeta had left the United States and fled to Mexico. *Appellant's App.* at 11. On February 7, 2008, the trial court issued an order for Gaeta to appear in court on February 15, 2008. Gaeta failed to appear as ordered, and on February 25, 2008, the trial court issued a warrant for his arrest and ordered Roche Surety to produce Gaeta pursuant to Indiana Code section 27–10–2–12(a).

On September 23, 2008, Roche Surety, through its attorney, requested a warrant with the word "extraditable" on it, so that its agents could secure Gaeta's arrest in Mexico and transport him to the United States. *Tr.* at 2. Gaeta, through his counsel, and the State objected because informal rendition was illegal under Mexican law. *Id.* at 2–4, 8. The trial court issued the extraditable warrant, which was later vacated upon the State's request, and the previously-issued warrant was reinstated.

No further proceedings took place until February 23, 2009, 364 days after notice of Gaeta's failure to appear was given to Roche Surety pursuant to Indiana Code

section 27–10–2–12. On that date, Roche Surety filed its "Motion of Compliance," which informed the court that it had searched for Gaeta in numerous places in Mexico, but had only found him on December 29, 2008. *Appellant's App.* at 16, 38–39. The motion also stated that, "defendant's appearance is prevented by his illness" and was without the consent of Roche Surety. *Id.* at 16. It further advised the trial court that Gaeta was terminally ill with HIV/AIDS in the country of Mexico and unable to travel. *Id.* The trial court ordered the State to file a response to the motion and set a hearing on the matter of Roche Surety's liability for April 3, 2009. On April 30, 2009, Roche Surety filed its "Verified Petition to Avoid Forfeiture and Release of Surety Bail Bond." *Id.* at 44–45. After several continuances, a hearing on Roche Surety's liability was held on August 23, 2010.

At the hearing, Roche Surety offered into evidence several translated documents and hearsay statements that it claimed proved that Gaeta had died on August 16, 2009. The State objected to this evidence and argued that it was hearsay and not properly authenticated. On October 4, 2010, the trial court issued its order assessing a late surrender fee of $200,000, which represented 80% of the face value of the bond, and ordered Roche Surety to pay the amount to the clerk of Tippecanoe County. In assessing such fee, the trial court found that Roche Surety's compliance with Indiana Code section 27–10–2–12 occurred more than 240 days but not more than 365 days after notice was given. *Id.* at 77–78. Roche Surety now appeals, and the State cross-appeals.

## DISCUSSION AND DECISION

### I. Error to Order Late Surrender Fee

Roche Surety argues that the trial court misinterpreted Indiana Code section 27–10–2–12 as requiring a late surrender fee. A question of statutory interpretation is a matter of law to be determined de novo. *Recker v. State,* 904 N.E.2d 724, 726 (Ind. Ct.App.2009), *trans. denied.* We are not bound by the trial court's legal interpretation of a statute and need not give it any deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us, using the express language of the statute and following the rules of statutory construction. *Id.* " 'Where the language of the statute is clear and unambiguous, there is nothing to construe; however where the language is susceptible to more than one interpretation, the statute must be construed to give effect to the legislature's intent.' " *Id.* (quoting *Leeth v. State,* 868 N.E.2d 65, 67–68 (Ind.Ct.App.2007)). We presume that the legislature intended the language to be applied logically and not to bring about an unjust or absurd result. *Id.* When possible, every word must be given effect and meaning. *Marion Cnty. v. State,* 888 N.E.2d 292, 303 (Ind.Ct.App.2008). Interpreting a statute in such a way as to render some of it mere surplusage violates standard principles of statutory construction. *Wolfe v. Eagle Ridge Holding Co., LLC,* 869 N.E.2d 521, 528 (Ind.Ct.App. 2007). " 'While it is true that where the legislature amends a statute, it is presumed that it intended to change its meaning, this presumption will not apply if it appears that the amendment was made only to express the original intention of the legislature more clearly.' " *Bourbon Mini–Mart, Inc. v. Comm'r, Ind. Dep't of Envtl. Mgmt,* 806 N.E.2d 14, 21 (Ind.Ct. App.2004) (quoting *Med. Disposal Servs., Inc. v. Ind. Dep't of Envtl. Mgmt.,* 669 N.E.2d 1054, 1058 (Ind.Ct.App.1996), *trans. denied* ).

Indiana Code section 27–10–2–12 states, in pertinent part:

(b) The bail agent or surety must:

(1) produce the defendant; or

(2) prove within three hundred sixty-five (365) days:

(A) that the appearance of the defendant was prevented:

(i) by the defendant's illness or death;

(ii) because the defendant was at the scheduled time of appearance or currently is in the custody of the United States, a state, or a political subdivision of the United States or a state;

(iii) because the required notice was not given; or

(iv) because authorities have refused to extradite the defendant, by a preponderance of the evidence; and

(B) the defendant's absence was not with the consent or connivance of the sureties.

(c) If the bail agent or surety does not comply with the terms of subsection (b) within one hundred twenty (120) days after the mailing of the notice required under subsection (a)(2), a late surrender fee shall be assessed against the bail agent or surety as follows:

. . . .

(4) If compliance occurs more than two hundred forty (240) days but not more than three hundred sixty-five (365) days after the mailing of notice, the late surrender fee is eighty percent (80%) of the face value of the bond.

Ind.Code § 27–10–2–12(b), (c).

Roche Surety argues that the trial court misinterpreted Indiana Code section 27–10–2–12 as requiring that it must pay a late surrender fee. It specifically contends that the trial court's reliance on

*Johnson v. State*, 567 N.E.2d 146 (Ind.Ct. App.1991) was misplaced because that case was decided before the statute was amended to its current version. This is because subsection (b)(2) of the prior version at issue in *Johnson* did not contain the language "within three hundred sixty-five (365) days." Roche Surety argues that the addition of this language showed the intent of the legislature to exempt compliance under subsection (b)(2) "from the more restrictive late surrender time tables imposed under subsection (c) of the statute, at least to the extent that the required proof under (b)(2) can be accomplished in 365 days." *Appellant's Br.* at 9. Therefore, it claims that the only interpretation that gives full effect to the amendment of subsection (b)(2) is "one that concludes that [Roche Surety] has the full 365 days to prove that the defendant's appearance was prevented by one of the enumerated factors prior to incurring any penalty under the state." *Id.* at 10. We do not agree.

In *Johnson*, this court held that compliance with subsection (b) is defined to occur when the required production of the defendant or proof of his inability to appear is made and not when the event which prevents the defendant's appearance occurs. 567 N.E.2d at 147. Therefore, in that case, we found that the trial court correctly used the date that the bondsmen proved the defendant's inability to appear as the date of compliance with subsection (b) of Indiana Code section 27–10–2–12 and correctly assessed the proper late surrender fee. *Id.* Roche Surety is correct that the version of 27–10–2–12 at issue in *Johnson* did not contain the language "within three hundred sixty-five days" in subsection (b)(2). The statute was subsequently amended by the legislature to add that language, among other changes. We do not believe that the addition of such lan-

guage changed the holding of *Johnson* or its application to the present case.

■ Here, Gaeta's failure to appear on February 15, 2008 was a breach of Roche Surety's obligation to the trial court. Ind. Code § 27–10–2–8(b). Such a breach sets in motion the process under Indiana Code section 27–10–2–12, whereby a bail agent or surety can be assessed late surrender fees and can be required to forfeit the bond. *State v. Boles,* 810 N.E.2d 1016, 1018 (Ind.2004). Under the statute, the trial court is required to issue a warrant and order the surety to surrender the defendant immediately; the clerk is also required to send notice of the order to the surety. I.C. § 27–10–2–12(a). After such notice is given, subsection (b) requires the surety to produce the defendant, or prove within 365 days, that the defendant's appearance was prevented by one of the listed reasons. I.C. § 27–10–2–12(b). The surety has 120 days within which to comply with (b) without incurring a late surrender fee. I.C. § 27–10–2–12(c). However, 120 days after notice has been given, late surrender fees begin to be assessed against the surety. I.C. § 27–10–2–12(c); *Boles,* 810 N.E.2d at 1018.

In 1985, the legislature recodified and amended this statute to add (b), which allowed bail agents and sureties to avoid complete forfeiture of bonds whenever a defendant failed to appear. *Lake Cnty. Clerk's Office v. Smith,* 766 N.E.2d 707, 710 (Ind.2002). Then, in 1989, Indiana Public Law 355–1989 added the time limit of 365 days to (b)(2) and five other locations in the statute. Ind. Pub.L. No. 355–1989, § 4 (1989). The amendments also extended the period of time of immunity for a bail agent or surety to comply with subsection (b) from the late surrender fees from 90 days to 120 days, as well as lengthening the amount of time for each increase in the late surrender fees from a range of 90 to 210 days to 120 to the current range of 120 days to 365 days. *Id.* The intent of these amendments is clear from the effect of them, which was to expand the deadline for compliance with subsection (b) and to extend the time periods for the imposition of the late surrender fees.

Further, nothing in the current or the prior version of the statute leads this court to the conclusion that compliance with subsection (b)(1) is to be treated differently from compliance with subsection (b)(2). Both versions specifically state that late surrender fees "shall be assessed" when a surety "does not comply with the terms of subsection (b)," and there is no further statement that the two parts of subsection (b) should be treated differently in assessing the late surrender fees. *Id.;* I.C. § 27–10–2–12(c). In fact, both versions of the statute treat compliance or non-compliance with both subsection (b)(1) and subsection (b)(2) the same for the purpose of imposing late surrender fees. Ind. Pub.L. No. 355–1989, § 4 (1989); I.C. § 27–10–2–12. *See also Boles,* 810 N.E.2d at 1018; *Smith,* 766 N.E.2d at 710 (both cases stating that trial court shall assess late surrender fees when bail agent or surety does not comply with requirements of subsection (b)(1) or subsection (b)(2)).

■ We conclude that Indiana Code section 27–10–2–12 is not ambiguous. It clearly imposes late surrender fees when a bail agent or surety does not produce the defendant or show proof under subsection (b)(2) within 120 days of the mailing of the notice required under (a)(2). I.C. § 27–10–2–12(c). The late surrender fees increase thereafter as the time increases for the bail agent or surety to comply with (b)(2), with the maximum late surrender fee being 80% of the face value of the bond. I.C. § 27–10–2–12(c)(5). We believe this is a logical reading of the statute

because the late surrender fees serve as an incentive for sureties to produce a defendant or prove his inability to appear; the sooner a surety complies, the less the late surrender fees will be. *Smith,* 766 N.E.2d at 713. The trial court did not misinterpret Indiana Code section 27–10–2–12. Because Roche Surety did not comply with subsection (b) until more than 240 days but not more than 365 days after notice had been given of Gaeta's failure to appear, the trial court properly imposed an 80% late surrender fee.

## II. Waiver of Late Surrender Fees

■ Subsection (e) of Indiana Code section 27–10–2–12 allows the trial court to waive the late surrender fees when certain conditions are met. I.C. § 27–10–2–12(e). This subsection gives "the trial court discretion to waive the late surrender fee in certain circumstances." *Int'l Fid. Ins. Co. v. State,* 567 N.E.2d 1161, 1164 (Ind.Ct. App.1991). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Chacon v. Jones–Schilds,* 904 N.E.2d 286, 289 (Ind. Ct.App.2009).

Roche Surety argues that the trial court abused its discretion when it failed to find that the late surrender fees should be waived. Roche Surety contends that it produced sufficient evidence to prove that it had made diligent efforts to locate Gaeta, including hiring a recovery agent, paying an informant to gain information on Gaeta's location, seeking an extraditable warrant, and working with various government agencies to try to locate Gaeta. Roche Surety therefore claims that the trial court should have concluded that Roche Surety had used diligent efforts to locate Gaeta and waived the late surrender fees.

Under subsection (e) of Indiana Code section 27–10–2–12,

> The court may waive the late surrender fee or extend the period for payment beyond the statutorily permitted, or both, if the following conditions are met:
>
> (1) A written request is filed with the court and the prosecutor.
>
> (2) The surety or bail agent provides evidence satisfactory to the court that diligent efforts were made to locate the defendant.

I.C. § 27–10–2–12(e).

In the present case, Gaeta failed to appear on February 15, 2008, and notice was given to Roche Surety on February 25, 2008. On September 23, 2008, Roche Surety requested the trial court to issue a warrant that included the word "extraditable," to which both the State and Gaeta's own attorney objected. *Appellant's App.* at 8; *Tr.* at 2–4, 8. On October 31, 2008, the parties appeared in court, and Roche Surety explained that it needed the word "extraditable" on the warrant so that its agents could secure Gaeta's arrest in Mexico and transport him back to the United States. *Tr.* at 4. On February 23, 2009, 364 days after notice was given, Roche Surety filed its motion of compliance, which stated that Gaeta was terminally ill and located in Mexico and that he was unable to travel. *Appellant's App.* at 16. Attached to this motion were medical records dated January 25, 2009, detailing Gaeta's illness of HIV/AIDS and treatment in Mexico, which began in April 2008. *Id.* at 18–37. Also attached was an affidavit from the recovery agent, stating she was retained by Roche Surety on July 16, 2008 and that, although she searched for Gaeta in numerous places in Mexico, she had only found him on December 29, 2008. *Id.* at 38–39.

The 120–day grace period under Indiana Code section 27–10–2–12 expired on June 24, 2008. The evidence presented

showed no effort to locate Gaeta prior to this date. Although a representative of Roche Surety testified that she had paid a confidential informant $5,000 and gained information about the general area where he was located in Mexico, there was no testimony as to when this information was obtained. Additionally, no evidence was presented that Roche Surety attempted to gain information about Gaeta's whereabouts from his family, who were located in Indiana. The first evidence of Roche Surety's attempts to locate Gaeta was its engagement of a recovery agent on July 16, 2008. Thereafter, it appears that Roche Surety had located Gaeta by September 23, 2008, because it requested an "extraditable" warrant, but it did not inform the State of this until the hearing on October 31, 2008. *Tr.* at 4. Further, Roche Surety's February 23, 2009 motion of compliance contained an affidavit that Gaeta's whereabouts had not been discovered until December 29, 2008, and the State was not informed of Gaeta's location until the date of such motion.

Therefore, the evidence shows that Roche Surety made little, if any effort, to locate Gaeta until after the 120–day grace period had run and late surrender fees had begun to accrue under subsection (c). Even after Roche Surety had located Gaeta, and had made contact with him, it did not attempt to comply with subsection (b) and inform the trial court of his location. It did not do so until February 23, 2009 when it filed its motion of compliance. We conclude that the trial court did not abuse its discretion in declining to waive the late surrender fees and in finding that Roche Surety did not prove that it made diligent efforts to locate Gaeta.

### III. Cross–Appeal

The State cross-appeals, arguing that Roche Surety failed to comply with Indiana Code section 27–10–2–12(b)(2) be-cause its motion of compliance failed to prove that Gaeta's appearance was prevented by any of the "exonerating causes listed in subsection (b)(2)." *Appellee's Br.* at 12. The State contends that none of the information presented by Roche Surety in its February 23, 2009 motion of compliance offered any explanation as to why Gaeta failed to appear on February 15, 2008 or showed that his appearance on February 15, 2008 was prevented by any of the reasons in subsection (b)(2). The State claims that the trial court misapplied the statute when it allowed Roche Surety to satisfy subsection (b)(2) with evidence from after the date he failed to appear. The State further argues that, even if the statute is read to allow a "reduction in the penalties imposed on defaulting bondsmen due to subsequent events which make surrender impracticable," the trial court abused its discretion in admitting the evidence offered by Roche Surety because the evidence was not properly authenticated and constituted hearsay. The State therefore asserts that, because Roche Surety failed to comply with subsection (b)(2) within 365 days, Roche Surety is liable for the 80% late surrender fee and forfeiture of 20% of the face value of the bond, pursuant to subsection (d). We agree.

As previously stated, a question of statutory interpretation is a matter of law to be determined de novo. *Recker*, 904 N.E.2d at 726. We are not bound by the trial court's legal interpretation of a statute and need not give it any deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us, using the express language of the statute and following the rules of statutory construction. *Id.* " 'Where the language of the statute is clear and unambiguous, there is nothing to construe; however where the language is susceptible to more

than one interpretation, the statute must be construed to give effect to the legislature's intent.'" *Id.* (quoting *Leeth*, 868 N.E.2d at 67–68). We presume that the legislature intended the language to be applied logically and not to bring about an unjust or absurd result. *Id.*

Indiana Code section 27–10–2–12(d) states in pertinent part: "If the bail agent or surety does not comply with the terms of subsection (b) within three hundred sixty-five (365) days of the mailing of the notice required under subsection (a)(2), the court shall declare forfeited an amount equal to twenty percent (20%) of the face value of the bond. Assuming without deciding that the evidence offered by Roche Surety was properly admitted by the trial court, we still conclude that the trial court erred as a matter of law in finding that the 20% forfeiture under subsection (d) should not be imposed because Roche Surety complied with subsection (b) within 365 days of the mailing of notice." In its motion of compliance, Roche Surety stated that Gaeta's "appearance *is* prevented by his illness and was without the consent or connivance of the surety." *Appellant's App.* at 16 (emphasis added). However, subsection (b) states that the surety must prove within 365 days "that the appearance of the defendant *was* prevented by the defendant's illness or death." I.C. § 27–10–2–12(b)(2)(A)(i) (emphasis added).

▮▮▮ The statute clearly requires the proof presented by a bail agent or surety to show why a defendant was prevented from appearing on the date of the hearing and not why he could not appear at the time such proof is made. Although evidence of later inability to appear in front of the trial court may have bearing on why a defendant could not appear on the date he failed to appear, the statute still re-

quires proof as to why a defendant's appearance was prevented. We therefore believe that the most logical reading of Indiana Code section 27–10–2–12(b) requires the proof presented by a bail agent or surety to show why a defendant was prevented from appearing on the date of the hearing and not some later point in time.

Here, Gaeta failed to appear for his hearing on February 15, 2008. According to subsection (b), Roche Surety was required to prove that Gaeta's appearance on that date *was* prevented by Gaeta's illness or death. I.C. 27–10–2–12(b)(2)(A)(i). We initially note that, although Gaeta has subsequently died, his death was not sufficient to satisfy subsection (b) as it was not the reason alleged in Roche Surety's motion for Gaeta's failure to appear and because Gaeta's date of death was August 16, 2009, eighteen months after his failure to appear at the February 15, 2008 hearing. Further, we do not believe that the evidence presented regarding Gaeta's illness was sufficient to prove compliance with subsection (b). Roche Surety's motion of compliance filed February 23, 2009 stated that Gaeta's "appearance *is* prevented by his illness," he "*is* terminally ill in the country of Mexico," and he "*is* currently unable to travel and is in a bedridden terminal condition." *Appellant's App.* at 16. Roche Surety included medical records, dated January 25, 2009, which reported that, on April 20, 2008, Gaeta was admitted to the hospital in Mexico and diagnosed as being in the terminal phase of HIV/AIDS. *Id.* at 19–37. Although the medical records state that Gaeta was suffering severe symptoms on the date he was admitted to the hospital, none of the evidence presented by Roche Surety proves that his appearance on February 15, 2008 was prevented by illness as required by the statute.[1] We

---

1. We also note that Roche Surety contends     that its evidence was sufficient to prove that

therefore conclude that Roche Surety did not comply with Indiana Code section 27–10–2–12(b) within 365 days as required by subsection (d), and the trial court erred in not ordering a forfeiture of 20% of the face value of the bond. We remand with instructions for the trial court to enter judgment assessing the 80% late surrender fee already imposed and forfeiting 20% of the face value of the bond.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.

Gaeta was prevented from appearing due to illness by pointing to a statement in the medical records that Gaeta's symptoms began six months prior to the date he was admitted to the hospital on April 20, 2008. However, the Chronological Case Summary reveals that Gaeta was able to appear at a court hearing on October 29, 2007, less than six months prior to his admittance into the hospital in Mexico.