# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1260

HERBERT SMITH,

*Plaintiff-Appellant,*

v.

CITY OF HAMMOND, INDIANA, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 03 C 542—**Rudy Lozano**, *Judge.*

_____

ARGUED SEPTEMBER 10, 2004—DECIDED NOVEMBER 3, 2004

_____

Before FLAUM, *Chief Judge*, and POSNER and ROVNER,
*Circuit Judges.*

POSNER, *Circuit Judge.* A woman named Leatrice Warren
was arrested by the Hammond police and charged with a
variety of relatively minor (as these things go) offenses, in-
cluding battery, intimidation, possession of marijuana, dis-
orderly conduct, and resisting arrest, all probably arising
from the same incident and eventually resolved by a plea
agreement the terms of which we do not know. When she
was arrested, Judge Harkin of the Hammond City Court set

bail at $6,800 "cash only." This meant that to get out of jail Warren would have to deposit 10 percent of the amount of the bail—$680—with the court. Ind. Code § 35-33-8-3.2(a)(2). If she complied with the conditions of bail (which is to say if she didn't skip town), the money would be returned to her, minus certain offsets (administrative fees, restitution if ordered, fines if imposed). *Id.*; *Obregon v. State*, 703 N.E.2d 695 (Ind. App. 1998). Warren's family had paid our plaintiff, Herbert Smith, a bail bondsman licensed by the State of Indiana, a $680 premium for a $6,800 surety bond, but the police, at the judge's direction, refused to accept the bond, instead insisting on the cash bond in the same amount. This meant that Smith—assuming he returned the premium to his client—was out the $680.

One wonders why Warren's family would pay Smith a nonrefundable $680 when the same $680, deposited with the court, would (depending on the outcome of the criminal proceeding) be largely refundable. Because the family didn't know any better, perhaps being misled by Smith? Or did the family perhaps want Smith to be on the hook for the rest of the bond when Warren skipped? But then, if Smith had the same thought about the likely outcome, he would not have agreed to underwrite a bond.

Even more mysterious is that Warren originally was a co-plaintiff with Smith in this lawsuit, though she later dropped out.

Upset that the bond had been refused, Smith brought this suit under 42 U.S.C. § 1983 against the judge, the city clerk and the city police chief, the judge's court, and the City itself, contending that the defendants have a policy of refusing to accept surety bonds and that this policy violates the U.S. Constitution by depriving Smith of a property interest consisting of his license. His license is worthless, he contends, if he cannot write surety bonds in Hammond

because the court will accept only cash bonds. The suit seeks damages but his appeal is from the denial of his motion for a preliminary injunction, which he sought on the ground that damages will be difficult to determine and that therefore he is incurring irreparable harm.

Not only has the appeal no merit, but it is evident that the entire suit should be dismissed. Three of the four defendants—the City, the clerk, and the police chief—do not belong in the case at all. None of them has, or is claimed to have asserted, any authority over the setting of bonds. (Regarding the City's liability, see, e.g., *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986).) Smith might just as well have sued the Governor of New Mexico. In Indiana as elsewhere, "the power to establish bail is exclusively judicial." *Board of County Commissioners v. Farris*, 342 N.E.2d 642, 644 (Ind. App. 1976); see also Ind. Code §§ 35-33-8-3.2(a), -4; cf. *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998); *Franceschi v. Schwartz*, 57 F.3d 828, 830 (9th Cir. 1995) (per curiam). And though an official who lacked legal authority over some matter might nevertheless use his official status ("color of law") to influence the officials who did have the relevant jurisdiction, Smith doesn't indicate what role he thinks the clerk or the police chief plays in Judge Harkin's bail decisions except to execute them. As mere executants they would be sheltered by the judge's absolute immunity (of which more shortly), *Snyder v. Nolen*, 380 F.3d 279, 287 (7th Cir. 2004) (per curiam); *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001); *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002); *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001), and even as collaborators they would be sheltered by the absence of any established Fourteenth Amendment entitlement to issue a surety bond. We can even delete "established." The decision to require either a cash bond or a surety bond is a discretionary judicial act, *Mott v. State*, 490 N.E.2d 1125, 1129 (Ind. App. 1986), and therefore no bondsman has a sufficiently

firm and definite interest in the issuance of a surety bond to be adjudged a Fourteenth Amendment property holder. *Baldwin v. Daniels*, 250 F.3d 943, 946-47 (5th Cir. 2001) (per curiam)

As for Judge Harkin, he has, of course, absolute immunity from liability for damages arising from judicial acts, and the setting of bail is one of them. *Mireles v. Waco*, 502 U.S. 9, 11-13 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 362-64 (1978); *Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000); *Tucker v. Outwater*, 118 F.3d 930, 932-33 (2d Cir. 1997); *Franceschi v. Schwartz, supra*, 57 F.3d at 830; *King v. Love*, 766 F.2d 962, 968 (6th Cir. 1985). It is true that the core concern animating absolute immunity for judges is the prospect of malicious suits by disappointed litigants, and Smith was not a party to the suit in which Judge Harkin issued the order of which Smith is complaining. But that is not a saving grace when one considers how common it is for judicial rulings to have adverse effects on nonparties that might prompt them to seek judicial revenge against the judge.

Smith also seeks injunctive relief against the judge, but here he runs up against a 1996 amendment to 42 U.S.C. § 1983 that provides "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853. Setting bail is a judicial act, as we said, and the exception involving declaratory relief is inapplicable to this case. Declaratory relief is not unavailable just because it is not an award of damages—yet that is Smith's argument.

What is more, we don't see how a motion for a preliminary injunction can be premised on the difficulty of deter-

mining damages—Smith's only ground—when the defendant is absolutely immune from damages liability. It would be beyond odd to argue for preliminary relief on the ground that one had no legal right to permanent relief, when it is only the existence of a probability of eventually prevailing that entitles a plaintiff to seek preliminary relief to protect his expectation. Similarly, while in some cases it might be argued that a defendant's immunity from damages liability might constitute irreparable harm entitling the plaintiff to preliminary relief, *Hillhaven Corp. v. Wisconsin Dept. of Health & Social Services*, 733 F.2d 1224, 1226 (7th Cir. 1984) (per curiam); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 361-62 (4th Cir. 1991), this argument won't fly in a case such as this in which the defendant (by virtue of the 1996 amendment to section 1983) is immune from being enjoined as well as from having to pay damages. As Smith is not entitled to obtain a final judgment awarding him either monetary or equitable relief against Judge Harkin, he cannot obtain preliminary relief, which is merely a way station to final relief. (He comes perilously close to arguing that the weaker the case, the stronger the argument for preliminary relief.) Nor can the absolute immunity of a judge be got round by suing his employer (in this case the Hammond city court) on a theory of respondeat superior, which is not a basis of liability authorized by section 1983.

So everywhere Smith might turn, relief is blocked; and anyway his theory of liability—that by insisting on cash bonds Judge Harkin is arbitrarily depriving him of his license in violation of the due process clause of the Fourteenth Amendment—has no merit even on its own grounds, that is, even ignoring issues of immunity. Judge Harkin is not depriving Smith of his license, but merely reducing Smith's income from it. A provider of services to a court has no standing to challenge judicial rulings that reduce the demand for his services and hence his income. He is injured

but he is not within the protected class. If a judge who is "soft" on crime releases arrested persons on their own recognizance, a bail bondsman cannot challenge the judge's ruling on the ground that it will reduce the bondsman's business. Manufacturers of shackles cannot sue when a judge decides that criminal defendants shall not be shackled in his courtroom. Smith could not sue the prosecutor for not bringing enough charges for violent crime (the sort that lead to surety bonds), or for charging too many poor defendants on the theory that the public fisc does not pay as handsomely as solvent defendants do. When the Federal Reserve juices up the economy, pawnbrokers cannot head to court to stop the undermining of their livelihoods.

As if this weren't enough to demonstrate the frivolous nature of this suit, Smith is claiming a violation of the Fourteenth Amendment, which requires that he show an entitlement that can be characterized as property or liberty to issue surety bonds, and we saw earlier that he cannot show that.

We add unnecessarily that Judge Harkin's policy is not arbitrary. The difference between cash bonds and surety bonds is, as we mentioned, that if the defendant has a cash bond and complies with its terms he has a shot at getting his money back, but if he has a surety bond he doesn't get the premium back, typically, as in this case, 10 percent of the face amount of the bond. *Lake County Clerk's Office v. Smith*, 766 N.E.2d 707, 709-10 (Ind. 2002); Holly J. Joiner, Note, "Private Police: Defending the Power of Professional Bail Bondsmen," 32 *Ind. L. Rev.* 1413, 1417 (1999). If the defendant is a substantial flight risk, the judge, as an alternative to increasing the amount of bail and thus the amount of a cash bond, may require the posting of a surety bond, to get the bondsman's assessment of the risk (which will determine the premium) and also his aid in assuring compliance

with the terms of bail, since the bondsman will have to pay if they are violated. *Id.* at 1422-27. But this is a judgment for the judge to make—not the bondsman by suing the judge. It is, moreover, a discretionary judgment, as we noted earlier.

The denial of the motion for a preliminary injunction is affirmed, and in view of the plainly meritless character of the underlying suit we suggest that the district judge dismiss it without further ado. If Smith persists in this hopeless litigation, he—and his lawyer—are courting sanctions.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*