**Herbert SMITH, Jr., d/b/a Express Bail Bonds, Inc., and in his personal capacity as a taxpayer; Midwest Bonding, Inc.; and Indiana Surety Bail Agents Association, Inc., Appellants–Plaintiffs,**

v.

**CITY OF HAMMOND; Robert Golec, in his official and personal capacity as the Clerk of the City of Hammond; Jeffrey A. Harkin, in his official and personal capacity as Judge of the Hammond City Court; and John E. Cory, in his official and personal capacity as Hammond Chief of Police; and their successors in office, Appellees–Defendants.**

No. 45A03–0509–CV–468.

Court of Appeals of Indiana.

May 30, 2006.

Rehearing Denied Aug. 3, 2006.

---

Douglas M. Grimes, Douglas M. Grimes, P.C., Gary, for Appellants.

David W. Weigle, Hammond, for Appellees.

**1.** Because Douglas Grimes appears to represent all of the Appellants and raises the same issues for all, we collectively refer to the Appellants as "Smith" unless otherwise indicated.

## OPINION

KIRSCH, Chief Judge.

Herbert Smith, Jr., in his personal capacity as a taxpayer and doing business as Express Bail Bonds, Inc. ("Express"), Midwest Bonding, Inc. ("Midwest"), and Indiana Surety Bail Agents Association, Inc. ("Indiana Surety") (collectively, "Smith")[1] appeal from the trial court's grant of summary judgment in favor of the City of Hammond, Robert Golec, in his official and personal capacity as Clerk of the City of Hammond, Jeffrey A. Harkin, in his official and personal capacity as Judge of the Hammond City Court, and John E. Cory,[2] in his official and personal capacity as Hammond Chief of Police (collectively, the "Hammond Defendants"). On appeal, Smith raises numerous issues, which we consolidate and restate as whether the trial court erred in granting the Hammond Defendants' motion for summary judgment.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Herbert Smith is a bail agent licensed by the State of Indiana. Midwest is an Indiana corporation authorized to conduct business as a bail agency in the State of Indiana. Indiana Surety is an Indiana corporation whose membership includes persons who hold a valid bail agent or recovery agent license, are actively engaged in the bail profession, and are appointed with an insurer admitted to transact surety business under IC 27–10–1–7. Judge Harkin, as Judge of the Hammond City Court, adheres to a policy that requires incarcerated criminal defendants to

**2.** In their briefs, the parties incorrectly spell John Cory's name as "Corey." *See Appellant's App.* at 24.

make a cash deposit of 10% of their bail as a condition of their release. *See* IC 35–33–8–3.2(a)(2).[3]

On November 12, 1998, acting pro se, Smith filed a complaint against the City of Hammond, the Hammond Police Department, its Chief of Police, and the Clerk of the Hammond City Court contending that the Indiana bail statutes were unconstitutional. On August 17, 2004, Smith's counsel filed a three-count amended complaint, which named Express, Midwest, and Indiana Surety as additional plaintiffs and Judge Harkin as an additional defendant.

In Count I of the amended complaint, Smith alleged that the Hammond Defendants established, maintained, and enforced a policy that denies licensed bail agents equal access to the Hammond City Jail for the purpose of providing bonds for detainees in violation of IC 27–10–3–18[4] and, as a result of this denial of equal access, the Hammond Defendants have interfered with the contract that Smith has with Midwest. *Appellants' App.* at 17. Count II alleged that IC 35–33–8–3.2(a)(2) is unconstitutional in that it violates the "bailable by sufficient sureties" clause of Article I, Section 17 of the Indiana Constitution because sufficient sureties do not back the cash deposit. *Id.* at 19. Count II further alleged that Judge Harkin's mandate, i.e., that defendants incarcerated in the Hammond City Jail are only permitted to execute cash bail in an amount not less than 10% of the amount set, is unconstitutional as applied because it substantially nullifies other sections of IC 35–33–8–3.2 that allow surety bonds, full cash bonds, or real estate bonds. *Id.* at 19–20. Finally, in Count III, Smith alleged that the Hammond Defendants do not immediately enter a judgment of forfeiture when bonded persons fail to appear and, thus, fail to transfer forfeited bond money to the State's Common School Fund as required by IC 35–33–8–7(2)(e). *Id.* at 21. Smith sought attorney fees and equitable relief for all three counts, and also requested money damages for the first two counts. Smith presented no allegations that his legal remedies were inadequate.

On February 4, 2005, the Hammond Defendants moved for summary judgment. After a hearing on the motion, the trial court granted the motion and entered judgment in their favor. Smith now appeals.

---

**3.** IC 35–33–8–3.2(a)(2) provides:

(a) A court may admit a defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings, or, upon a showing of clear and convincing evidence that the defendant poses a risk of physical danger to another person or the community, to assure the public's physical safety:

. . . .

(2) Require the defendant to execute a bail bond by depositing cash or securities with the clerk of the court in an amount not less than ten percent (10%) of the bail. If the defendant is convicted, the court may retain all or a part of the cash or securities to pay fines, costs, fees, and restitution, if ordered by the court. A portion of the deposit, not to exceed ten percent (10%) of the monetary value of the deposit or fifty dollars ($50), whichever is the lesser amount, may be retained as an administrative fee. The clerk shall also retain from the deposit under this subdivision the following:

(A) Fines, costs, fees, and restitution as ordered by the court.

(B) Publicly paid costs of representation that shall be disposed of in accordance with subsection (b).

**4.** IC 27–10–3–18 provides: "A person who holds a valid bail agent's license issued by the insurance commissioner and registered as required in section 17 of this chapter may have equal access to the jails of this state for the purpose of making bond, subject to this article and rules adopted under this article."

## DISCUSSION AND DECISION

In their motion for summary judgment, the Hammond Defendants contended that: (1) the City of Hammond, its Clerk, and its Police Chief should be dismissed as inappropriate parties to the suit; (2) summary judgment should be granted in favor of Judge Harkin because he has absolute judicial immunity as to all counts; (3) Smith lacks standing as to Counts II and III because Smith cannot show adequate injury; (4) Smith's claims are res judicata in light of the numerous other cases he has filed in connection with this matter; (5) that the suit constitutes an impermissible collateral attack; and (6) sanctions should be imposed against Smith. *Appellants' App.* at 55–66. Noting that Smith had filed numerous suits challenging the Indiana bail statutes, including one in the Seventh Circuit, the trial court granted summary judgment on the basis that the City of Hammond, its Clerk, and Police Chief were not appropriate parties, Judge Harkin was immune, and Smith did not have standing to bring the claim.

### I. Standard of Review

Smith contends that the trial court erred in granting summary judgment in favor of the Hammond Defendants because the Hammond Defendants did not carry their burden on summary judgment and were not entitled to judgment as a matter of law. A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind.Ct.App.2005), *trans. denied* (2006); *Tack's Steel Corp. v. ARC Constr. Co., Inc.*, 821 N.E.2d 883, 888 (Ind. Ct.App.2005). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Ind. Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Herr,* 834 N.E.2d at 703. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* On appeal from the grant or denial of a motion for summary judgment, our standard of review is the same as that of the trial court: "summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 702–03 (citing Ind. Trial Rule 56(C)); *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004), *trans. denied* (2005).

On appeal, the trial court's order granting a motion for summary judgment is cloaked with a presumption of validity. *Herr,* 834 N.E.2d at 703. A party appealing from such order has the burden of persuading us that the decision was erroneous. *Id.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Smith v. Yang,* 829 N.E.2d 624, 625 (Ind.Ct.App.2005); *Ledbetter v. Ball Mem'l Hosp.,* 724 N.E.2d 1113, 1116 (Ind. Ct.App.2000), *trans. denied.*

### II. Judicial Immunity

Under Count I of his amended complaint, Smith sued the Hammond Defendants for monetary damages and equitable relief, claiming that Judge Harkin's cash-only bond policy denied Smith equal access to the jails in violation of IC 27–10–3–18.

#### a. Monetary Damages

It is well settled that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless those actions are taken in the complete absence of any jurisdiction. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.

App.2001). The determination of whether to grant bail in a particular case is within the trial court's discretion. *Harvey v. State,* 751 N.E.2d 254, 258 (Ind.Ct.App. 2001); *see also* IC 35–33–8–3.2. So too is the decision of what form the bond should take. *See Mott v. State,* 490 N.E.2d 1125, 1129 (Ind.Ct.App.1986) (analyzing the predecessor to IC 35–33–8–3.2, court held that statute placed the manner of executing bail within discretion of trial judge and there was no showing that trial court abused its discretion in requiring surety bond rather than cash deposit). Quoting, with approval, language from *Sims,* 757 N.E.2d at 1024–25, the trial court explained:

> "... a judge will not be deprived of immunity simply because the action he took was in error or in excess of his or her authority.... The United States Supreme Court has stated that 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' ... The only situation in which a judge may be held liable for his or her actions is where the act is undertaken with clear and complete absence of jurisdiction over both the parties and the subject matter... When judicial immunity is at issue, we will construe a judge's jurisdiction liberally.".

*Appellants' App.* at 113. Because the granting of bail is within a judge's discretionary judicial actions and, here, no designated evidence was presented to the court from which it could conclude the trial court had an absence of personal and subject matter jurisdiction, the trial court did not err in finding Judge Harkin had judicial immunity from monetary damages.

■ In analyzing Smith's claim for monetary damages against the remaining three defendants, the trial court was influenced by the reasoning of the Seventh Circuit in Smith's federal case. *Appellants' App.* at 113; *see Smith v. City of Hammond,* 388 F.3d 304 (7th Cir.2004). While acknowledging that federal case law does not bind state courts, the trial court asserted it was, however, "not precluded from engaging in a similar analysis and embracing reasoning it deems legally sound." *Appellants' App.* at 113.. Accordingly, the trial court adopted the Seventh Circuit's reasoning and granted summary judgment on the basis that the City of Hammond, its Clerk, and its Police Chief did not belong in the case at all because none of them had authority over the setting of bonds. *Id.* (citing *Smith,* 388 F.3d at 306). Smith argues that this was error.

While generally contending that summary judgment was inappropriate, Smith specifically states that it was inappropriate to grant summary judgment on the theory that "None of them [the City, Clerk, or Police Chief] has, or is claimed to have asserted, any authority over the setting of bonds." *Appellants' App.* at 113. Smith alleges that, had the Hammond Defendants not flatly resisted discovery depositions, "they would have discovered that the **enforcement** (emphasis added) of an exclusive cash only bail bond policy was the gravamen of plaintiffs' complaint." *Appellants' Br.* at 8 (emphasis in original). While evidently conceding that without bond-setting authority these three defendants are not proper parties to this action, Smith asserts that they *are* proper as parties who *enforced* the court's policy. We need not decide whether Smith's enforcement theory, if developed, could have made these three Hammond Defendants appropriate parties to the action because the trial court's grant of summary judgment was also appropriate under a judicial immunity theory.

▆▆ The absolute judicial immunity afforded to a judge for all actions taken in the judge's judicial capacity, likewise, " 'extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.' " *Long v. Barrett,* 818 N.E.2d 18, 25 (Ind.Ct.App.2004) (quoting *Newman v. Deiter,* 702 N.E.2d 1093, 1100 (Ind.Ct.App. 1998)), *trans. denied* (2005), *cert. denied* 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 257 (1999). Where, like here, a police officer or clerk is acting in furtherance of the judge's order, the absolute judicial immunity afforded the judge also extends to that person for acts performed in furtherance of the judge's orders. *Id.* (citing *Newman,* 702 N.E.2d at 1100). Under this reasoning, the trial court did not err in granting summary judgment in favor of the City of Hammond, its Clerk, and its Police Chief on the issue of monetary damages.

#### b. Equitable Relief

▆▆ Smith next argues that the trial court erred in granting summary judgment on his claim for equitable relief. Smith argues that while the instant action does not arise under Section 1983, the relief sought mirrors the relief available under Section 1983 in actions brought against judges in their enforcement capaci-

ty.[5] *Appellants' Br.* at 11. Specifically, he asserts, "the Supreme Court has never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts." *Id.* at 10. Smith, however, fails to recognize that Section 1983 was amended in 1996 to prohibit the grant of injunctive relief in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable.[6] Smith has made no claim that a declaratory decree was violated or declaratory relief was unavailable. The trial court did not err in granting summary judgment for equitable relief under Count I.

### III. Standing

The trial court also granted summary judgment in favor of the Hammond Defendants as to Counts II and III, reasoning that Smith, although potentially injured, was not within the protected class and therefore did not have standing.

▆▆ Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit. *Villegas v. Silverman,* 832 N.E.2d 598, 604 (Ind.Ct.App.2005); *Patterson v. Seavoy,* 822 N.E.2d 206, 210 (Ind.Ct.App.2005), *trans. dismissed* (2006). To establish standing, a plaintiff must demonstrate a

---

5. In Count I of his Amended Complaint, Smith asserted: "Defendants under the color of state law established[,] maintain[,] and enforce a policy that denies licensed bail agent Smith and others similarly situated from having equal access to the Hammond City Jail for the purpose of making bond for individuals incarcerated in the jail in violation of IC 27–10–3–18." *Appellants' App.* at 17. While Smith claims that this action does not arise under Section 1983, the language used in Smith's complaint is noticeably similar to that section's terms.

6. 42 USC § 1983, in pertinent part, provides:
 [e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

personal stake in the outcome of the lawsuit and that the injury is a result of the defendant's conduct. *Villegas*, 832 N.E.2d at 604; *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 991 (Ind.Ct.App.2003), *trans. denied* (2004).

 In Count II, Smith complained that the Hammond Court's policy of requiring a detainee to execute bail by depositing at least 10% of the bail amount with the court *in cash* violates the Indiana Constitution and, alternatively, that IC 35–33–8–3.2 is unconstitutional on its face. The trial court found that Smith did not have standing. Again relying on the reasoning of the Seventh Circuit, the trial court opined:

> "A provider of services to a court has no standing to challenge judicial rulings that reduce the demand for his services and hence his income. He is injured but he is not within the protected class. If a judge who is 'soft' on crime releases arrested persons on their own recognizance, a bail bondsman cannot challenge the judge's ruling on the ground that it will reduce the bondsman's business. Manufacturers of shackles cannot sue when a judge decides that criminal defendants shall not be shackled in his courtroom. Smith could not sue the prosecutor for not bringing enough charges for violent crime (the sort that lead to surety bonds), or for charging too many poor defendants on the theory that the public fisc does not pay as handsomely as solvent defendants do. When the Federal Reserve juices up the economy, pawnbrokers cannot head to court to stop the undermining of their livelihoods."

*Appellants' App.* at 114 (quoting *Smith*, 388 F.3d at 307–08). Under the allegations of Count II, the protected class consists of persons who are incarcerated and required to make bail. The only harm to Smith and the other Appellants is a possible reduction in demand for their business.

 Recognizing that he does not have standing under the general test, Smith asserts that, as a taxpayer, he has standing under the public standing doctrine—a limited exception carved out of the general standing requirement. In a concurrence, Justice Sullivan described this doctrine as follows:

> the public standing doctrine permits claims that government action is unconstitutional but, because "[s]tanding is a key component in maintaining our state constitutional scheme of separation of powers," the " 'availability of taxpayer or citizen standing' " is limited to " '*extreme circumstances.*' "

*Embry v. O'Bannon*, 798 N.E.2d 157, 167 (Ind.2003) (Sullivan, J., concurring) (citations omitted). Here, while Smith loosely claims that he is filing as an individual taxpayer, he fails to explain how he falls within extreme circumstances, which are required to grant him taxpayer standing. The trial court did not err in granting summary judgment on Count II.

In Count III, Smith asserts that Judge Harkin does not immediately enter judgment of forfeiture and that the Hammond Clerk does not transfer the forfeited money to the State's Common School Fund. Smith again fails to allege any extreme circumstances that would warrant granting Smith standing as a taxpayer. Furthermore, it is unclear how prevailing on Count III could provide him with a remedy. Smith has no standing to bring his claim under Count III, and the trial court did not err in granting summary judgment.

## IV. Sanctions

As a final matter, Smith has repeatedly challenged the constitutionality of the Indiana bail scheme under both Title 27 and Title 35. In November 2004, the Sev-

enth Circuit warned, "If Smith persists in this hopeless litigation, he—and his lawyer—are courting sanctions." *Smith*, 388 F.3d at 308.

In their brief in support of summary judgment, the Hammond Defendants requested the imposition of sanctions to "put an end to Smith's abuse of the judicial system." *Appellants' App.* at 65. The trial court entered its order granting summary judgment on July 8, 2005, but made no mention of sanctions. Since that date, the Seventh Circuit has imposed sanctions on Smith's attorney, Douglas M. Grimes, for filing a frivolous appeal before the Seventh Circuit. *Appellees' App.* at 2. Likewise, in an unpublished memorandum decision, dated September 23, 2005, our Court gave "fair warning to Smith and his counsel that this Court may well accept a future invitation [to grant sanctions] should they persist in playing variations on this same theme." *Finlon v. Golec,* No. 45A03–0503–CV–123, 835 N.E.2d 230, slip op. at 11 (Ind.Ct.App. Sept. 23, 2005). Because these decisions were reached after the trial court's order, we remand to the trial court to determine whether, considering the issues raised and the timing of the appeals, sanctions are now warranted in this case.

Affirmed.

SULLIVAN and DARDEN, JJ., concur.