Herbert SMITH, Jr., and Charles Zacek, Appellants–Plaintiffs,[1]

v.

LAKE COUNTY, Lake County Sheriff, and Clerk of the Lake Superior Court, Appellees–Defendants,

and

Criminal Justice Section LCBA, Appellee–Intervenor.

No. 45A03–0609–CV–430.

Court of Appeals of Indiana.

April 3, 2007.

1. Appellant's Brief asserts that Plaintiff Zacek is deceased.

Douglas M. Grimes, Gary, IN, Attorney for Appellant.

Matthew D. LaTulip, Hagberg LaTulip, Schererville, IN, Attorney for Appellee Lake County.

Edward H. Feldman, Highland, IN, Attorney for Appellee Clerk of Lake Superior Court.

James E. Foster, Funk and Foster, Hammond, IN, Attorney for Intervenor Criminal Justice Section LCBA.

## OPINION

CRONE, Judge.

### Case Summary

Herbert Smith appeals the trial court's entry of summary judgment in favor of defendants Lake County ("the County") and clerk of the Lake Superior Court ("the Clerk") on the basis that Smith's claim regarding the enforcement of Indiana Code Section 35–33–8.5–4 is barred by res judicata. The County, the Clerk, and intervenor Criminal Justice Section of the Lake County Bar Association ("the LCBA") (collectively, "Appellees") request sanctions against Smith, characterizing this litigation as "frivolous, unreasonable or groundless." Appellees' Br. at 19. We affirm and remand for a hearing on damages pursuant to Indiana Appellate Rule 66(E).

### Issues

We address the following issues:

I. Whether the trial court erred in granting summary judgment in favor of the County and the Clerk; and

II. Whether Appellees are entitled to damages pursuant to Appellate Rule 66(E).

### Facts and Procedural History

On November 22, 1999, under cause number 45D03–9911–CP–2969, bail bondsmen Smith and Charles Zacek (now deceased) (collectively, "the Plaintiffs") filed in Lake Superior Court a complaint for temporary restraining order, permanent injunction, and declaratory judgment against the County, the Clerk, the Lake County sheriff ("the Sheriff"), and others (collectively, "the Defendants"). The complaint alleged that Indiana Code Section 35–33–8–3.2 and other bail statutes were unconstitutional under the Equal Protection Clause of the U.S. Constitution and the Privileges and Immunities Clause of the Indiana Constitution, in that "when a defendant fails to appear, bail agents are subject to forfeiture and late surrender fees while defendants who post ten percent cash bonds are not." *Lake County Clerk's Office v. Smith*, 766 N.E.2d 707, 712 (Ind. 2002) ("Smith I").[2] The complaint alleged

2. The Plaintiffs also challenged the constitutionality of Indiana Code Sections 35–33–8–7, 35–33–8–8, and 27–10–2–12. When the Plaintiffs filed suit, Indiana Code Section 35–33–8–3.2 provided in pertinent part,

(a) A court may admit a defendant to bail and impose any of the following conditions to assure the defendant's appearance at any stage of the legal proceedings, or, upon a showing of clear and convincing evidence that the defendant poses a risk of physical danger to another person or the community, to assure the public's physical safety:

(1) Require the defendant to:
(A) execute a bail bond with sufficient solvent sureties;
(B) deposit cash or securities in an amount equal to the bail;
(C) execute a bond secured by real estate in the county, where thirty-three hundredths (0.33) of the true tax value less encumbrances is at least equal to the amount of the bail;
(D) post a real estate bond.
. . . .

certain facts relating to the Plaintiffs' posting of bond for three criminal defendants.[3]

On October 3, 2000, Judge James Danikolas entered an order declaring Indiana Code Section 35–33–8–3.2 unconstitutional and enjoining the Defendants from admitting criminal defendants to bail pursuant to that statute. The order also directed the Defendants to "follow the standards set forth" in Indiana Code Section 35–33–8.5–4, i.e., that "[n]o defendant shall be admitted to bail without first determining if the person is a resident of Indiana, at least 18 years of age, is a freeholder in the County where the prosecution is pending, and has assets worth at least twice the amount of the bail."[4] Appellees' App. at 50–51. On November 3, 2000, the LCBA filed a petition for leave to appear as amicus curiae, which was granted.

The Defendants appealed directly to the Indiana Supreme Court. The LCBA filed an amicus brief in support of the Defendants. In their appellate brief, the Plaintiffs made the following statements:

> IC 35–33–8–3.2 is in fact unconstitutional because as applied in Lake County, Indiana because [sic] the persons taking advantage of the 10 percent cash bond system are in most cases not qualified under IC 35–33–8.5–4 nor or [sic] they as the self insurer exposed to the same risks as the bail bondsman. Thus creating a system of disparate treatment, which denies the bail agent, equal protection under the law.
>
> . . . .
>
> The State of Indiana has entirely misstated the case at hand. The problem

---

3. (2) Require the defendant to execute a bail bond by depositing cash or securities with the clerk of the court in an amount not less than ten percent (10%) of the bail[.]

In *Smith I*, the court explained that

[a] "bail bond" is a bond executed by a person who has been arrested for the commission of an offense for the purpose of ensuring: (1) the person's appearance at the appropriate legal proceeding; (2) another person's physical safety; or (3) the safety of the community. I.C. § 35–33–8–1. A bail bond executed under Indiana Code section 35–33–8–3.2(a)(1)(A) is most commonly used by defendants who use a bail bondsman, while a bail bond executed under Indiana Code section 35–33–8–3.2(a)(2) is most commonly used by defendants who post ten percent cash bonds.

766 N.E.2d at 709.

3. *See Smith I*, 766 N.E.2d at 711 ("The events giving rise to this action are as follows. Smith posted a bail bond in the criminal division of the Lake County Superior Court for Sheree Parker–Robinson in the amount of $3000 in November 1996 and for Valerie McCutchen in the amount of $10,000 in February 1997. Parker–Robinson and McCutchen failed to appear. However, because Smith surrendered them to the court within 365 days, the court only ordered late surrender

fees totaling $2600. Likewise, Zacek posted a bail bond in the criminal division of the Lake County Superior Court for John Gorzcya in the amount of $10,000 in April 1997. Gorzcya also failed to appear, but Zacek was not able to surrender him to the court within 365 days. As a result, the court ordered forfeiture and late surrender fees totaling $10,000.").

4. Indiana Code Section 35–33–8.5–4 is better understood in conjunction with Indiana Code Section 35–33–8.5–3, which provides,

A court or officer required to take or accept any bail or recognizance or to approve the sureties offered on any bond or recognizance in any case of a criminal nature, may require any person offered as surety thereon to make affidavit of the person's qualifications or to be examined orally under oath touching the same, and such court or officer may take such affidavit or administer such oath.

Indiana Code Section 35–33–8.5–4 provides in pertinent part,

One (1) surety on every such recognizance must be a resident freeholder of the county in which the prosecution is pending, and the surety or sureties must be worth at least double the sum to be secured and must have property in this state liable to execution equal to the sum to be secured[.]

lies not with late surrender fees and the bond forfeiture. The problems lies [sic] with criminal defendant [sic] not complying with I.C. 35–33–85–4 [sic]; i.e. being a resident of the state, county in which prosecution is pending and having assets worth twice the amount of the bail. The bail bondsman is required to underwrite his liability and prove he can pay the forfeiture before he posts the bond. The criminal defendant does not.

*Id.* at 101–02. On April 22, 2002, our supreme court issued an opinion reversing the trial court's judgment and holding that Indiana's "statutory bail scheme" does not violate either the Equal Protection Clause of the U.S. Constitution or the Privileges and Immunities Clause of the Indiana Constitution. *Smith I,* 766 N.E.2d at 713–14.[5] In its opinion, the court addressed Indiana Code Section 35–33–8–3.2 but did not specifically mention Indiana Code Section 35–33–8.5–4.

On April 9, 2002, nearly two weeks before our supreme court issued its opinion in *Smith I,* the Plaintiffs filed a new complaint for temporary restraining order and preliminary injunction against the Sheriff, the County, and the Clerk in Lake Superior Court under cause number 45D11–0208–PL–94. That complaint does not appear in the record before us. On May 3,

2002, the Plaintiffs filed an amended complaint for declaratory judgment and permanent injunction against the County and the Clerk under cause number 45D03–0204–CP–298.[6] The amended complaint noted that pursuant to Article 1, Section 17 of the Indiana Constitution, "Offenses, other than murder or treason, shall be bailable by sufficient sureties." The amended complaint alleged that the County and the Clerk "refuses [sic] to enforce *any* of the provisions of I.C. 35–33–8.5–4 since they do not believe it applies to a criminal defendant or any person posting bond for the defendant." Appellant's App. at 24. The Plaintiffs requested a declaratory judgment that:

1. All bail schemes must comply with Article I Section 17 of the Indiana State Constitution.

2. That Lake County and the Clerk of the Lake Superior Court must comply with all of the provisions of I.C. 35–33–8.5–4.

3. That only a bail bondsman or insurance company may be a surety.

4. Enjoin Lake County and the Clerk of the Lake Superior Court from admitting any defendant to bail without the defendant first present-

---

5. *See Smith I,* 766 N.E.2d at 713, 714 ("In this case we conclude that Indiana's statutory bail scheme is rationally related to the State's interest in ensuring the presence of defendants at judicial proceedings. Accordingly, Bondsmen have failed to carry their burden of proving that Indiana's statutory bail scheme violates the Equal Protection Clause of the United States Constitution.... We conclude that any disparate treatment between bail agents and defendants who post ten percent cash bonds is reasonably related to the inherent characteristics between the two unequally treated classes. As with their equal protection claim, Bondsmen have failed to carry their burden of proving that Indiana's

statutory bail scheme violates Article I, Section 23 of the Indiana Constitution.").

6. The chronological case summary for this cause number does not appear in the record before us. Further complicating matters, we note that the Clerk filed a motion to dismiss under cause number CP–298; that the County filed a motion to dismiss under cause number CP–298, which was scratched out and replaced with number 45D03–0204–PL–12; and that the LCBA filed a motion to dismiss under cause number PL–12. Appellees' App. at 52, 55, 60. The Sheriff did not participate in the summary judgment proceedings at issue here, and the trial court did not specifically enter summary judgment in favor of the LCBA.

ing proof that he or she meets the requirements of I.C. 35–33–8.5–4 or

5. That the 10% percent [sic] bail scheme is unconstitutional.

*Id.* Unlike the complaint in *Smith I,* the amended complaint does not allege specific facts relating to the posting of bond for criminal defendants.

On May 22, 2002, the LCBA, which had been an amicus curiae in this proceeding, filed a petition to intervene as a party defendant, which the trial court granted.[7] Two days later, the Clerk filed a motion for change of judge and a motion to dismiss which asserted, *inter alia,* that the constitutionality of Indiana's bail scheme had been decided in *Smith I* and that the Plaintiffs lacked standing to bring their lawsuit. On May 29, 2002, the Clerk filed a motion to dismiss which incorporated the County's arguments by reference and asserted, *inter alia,* that the Clerk was not a necessary party to the action. On June 18, 2002, the LCBA filed a motion to dismiss which asserted, *inter alia,* that the Plaintiffs' claims were barred by res judicata.

Judge Jeffery Dywan was appointed special judge. On June 12, 2003, Temporary Judge Jennifer Kalas held a hearing on the motions to dismiss and took the matter under advisement. Because she considered evidence outside the pleadings, she treated the motions to dismiss as motions for summary judgment. On July 25, 2003, Temporary Judge Kalas granted summary judgment in favor of Appellees. Smith appealed. On April 27, 2004, another panel of this Court issued an opinion dismissing Smith's appeal on the basis that Temporary Judge Kalas lacked jurisdiction to rule on the motions to dismiss and remanding for further proceedings.

*Smith v. Lake County,* 807 N.E.2d 53 (Ind. Ct.App.2004) ("*Smith II* ").

On remand, Special Judge Dywan allowed further briefing and held a hearing on the motions for summary judgment on June 1, 2006. On June 21, 2006, Special Judge Dywan entered final summary judgment in favor of the County and the Clerk on the basis of res judicata. *See* Appellant's App. at 14 ("The court further finds that there is no just reason for delay and directs the clerk to enter final judgment in favor [of] Lake County and the Clerk of the Lake Superior Court."). This appeal ensued. Because Zacek is now deceased, and for simplicity's sake, we refer only to Smith for purposes of this appeal.

## Discussion and Decision

### I. Res Judicata

Smith contends that the trial court erred in granting summary judgment on the basis of res judicata. Our standard of review is well settled:

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. When material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts.

*Isanogel Ctr., Inc. v. Father Flanagan's Boys' Home, Inc.,* 839 N.E.2d 237, 242 (Ind.Ct.App.2005) (citation omitted), *trans. denied* (2006). "The party appealing a summary judgment ruling has the burden of persuading this Court that the grant or

---

7. The LCBA's petition to intervene does not appear in the record before us. As such, we are unaware of the LCBA's grounds for intervention or of its specific involvement, if any, with the enforcement of Indiana Code Section 35–33–8.5–4 in Lake County. *Cf.* Ind. Trial Rule 24 (authorizing intervention of right or permissive intervention).

denial of summary judgment was erroneous. We will affirm the grant of summary judgment on any legal basis supported by the designated evidence." *Bank One Trust No. 386 v. Zem, Inc.,* 809 N.E.2d 873, 878 (Ind.Ct.App.2004) (citation omitted), *trans. denied.*

■ As this Court stated over half a century ago, "It is a general policy of the law that courts refuse to grant negligent litigants a second opportunity to present the merits, if any, of their case." *Novak v. Novak,* 126 Ind.App. 428, 433, 133 N.E.2d 578, 581 (1956), *superseded by statute on other grounds.* "Res judicata serves to prevent litigation of disputes which are essentially the same. The doctrine of res judicata consists of two distinct components, claim preclusion and issue preclusion." *Dawson v. Estate of Ott,* 796 N.E.2d 1190, 1195 (Ind.Ct.App.2003) (citation omitted).

> Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. When claim preclusion applies, all matters that were *or might have been litigated* are deemed conclusively decided by the judgment in the prior action. Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, *or could have been,* determined in the prior action; and (4) the controversy adjudicated in the for-

mer action was between parties to the present suit or their privies.

*Id.* (emphases added) (citations omitted); *see also Hammond Pure Ice & Coal Co. v. Heitman,* 221 Ind. 352, 358–59, 47 N.E.2d 309, 311 (1943) ("It has been many times held by this court that the doctrine of *res adjudicata* embraces not only what was actually determined, *but every matter which the parties could have had litigated in the cause. The judgment in the former case is conclusive and bars a subsequent action if an opportunity was presented to litigate the entire subject matter in the first action.*") (second emphasis added).

■ Smith does not challenge the applicability of the first two factors mentioned above with respect to *Smith I* and this case. Regarding the third factor, Smith makes the following argument:

> The IC 35–33–8.5–4 claim [in this case] is not the same as the Lake County claims based on IC 35–33–8–3.2 [in *Smith I* ], because the nature of the alleged constitutional violations in Lake County is a question of law and relate [sic] to a different statute. This case involves factual questions as to the enforcement of IC 35–33–8.5–4 by Lake County.

Appellant's Br. at 9. As Judge Danikolas's order and their appellate brief in *Smith I* make clear, however, the Plaintiffs must have alleged at some point in the *Smith I* proceedings that the Defendants were not enforcing Indiana Code Section 35–33–8.5–4, and they litigated that matter in the context of their constitutional claims.[8] The fact that the matter was not actually determined by our supreme court in *Smith*

---

8. In their appellate brief in *Smith I,* the Plaintiffs asserted that Indiana Code Section 35–33–8–3.2 was unconstitutional as applied in Lake County because "the persons taking advantage of the 10 percent cash bond system [were] in most cases not qualified under IC 35–33–8.5–4" with respect to "being a resi-

dent of the state, county in which prosecution is pending and having assets worth twice the amount of bail." Appellees' App. at 101, 102. This amounts to an assertion that the Defendants were not enforcing those statutory requirements.

*I* is inconsequential for res judicata purposes. *See Hammond Pure Ice & Coal,* 221 Ind. at 358–59, 47 N.E.2d at 311; *Dawson,* 796 N.E.2d at 1195.[9]

Smith further argues that res judicata is inapplicable because the LCBA was not an intervenor in *Smith I.* We note, however, that the trial court entered summary judgment in this case only as to the County and the Clerk, both of whom were parties in *Smith I.* As such, res judicata is applicable as to them. We therefore affirm the trial court's entry of summary judgment in favor of the County and the Clerk. Consequently, we need not address Appellees' argument that summary judgment is sustainable because the Plaintiffs do not have standing to bring their claim.

## II.  Damages

Appellees point out that the proceedings in *Smith I* and in this case are not Smith's only legal challenges to the constitutionality and application of Indiana's bail scheme. In *Smith v. City of Hammond,* 848 N.E.2d 333 (Ind.Ct.App.2006) (*"Smith III"*), *trans. denied,* another panel of this court affirmed summary judgment against Smith on claims that he raised against Hammond officials regarding several provisions of Indiana's bail scheme.[10] As our colleagues in *Smith III* (including Judge Sullivan) duly noted,

> Smith has repeatedly challenged the constitutionality of the Indiana bail scheme under both Title 27 and Title 35. In November 2004, the Seventh Circuit warned, "If Smith persists in this hopeless litigation, he—and his lawyer—are courting sanctions." *Smith* [*v. City of Hammond,* 388 F.3d 304, 308 (7th Cir. 2004) (*"Smith IV"*).[11]]

In their brief in support of summary judgment, the Hammond Defendants re-

9. We note that the Plaintiffs could have filed a petition for rehearing with our supreme court in *Smith I,* urging the court to address their claim regarding Indiana Code Section 35–33–8.5–4.

10. *See Smith III,* 848 N.E.2d at 336 ("In Count I of the amended complaint, Smith alleged that the Hammond Defendants established, maintained, and enforced a policy that denies licensed bail agents equal access to the Hammond City Jail for the purpose of providing bonds for detainees in violation of IC 27–10–3–18 and, as a result of this denial of equal access, the Hammond Defendants have interfered with the contract that Smith has with Midwest [Bonding, Inc.]. Count II alleged that IC 35–33–8–3.2(a)(2) is unconstitutional in that it violates the 'bailable by sufficient sureties' clause of Article I, Section 17 of the Indiana Constitution because sufficient sureties do not back the cash deposit. Count II further alleged that Judge Harkin's mandate, i.e., that defendants incarcerated in the Hammond City Jail are only permitted to execute cash bail in an amount not less than 10% of the amount set, is unconstitutional as applied because it substantially nullifies other sections of IC 35–33–8–3.2 that allow surety bonds, full cash bonds, or real estate bonds. Finally, in Count III, Smith alleged that the Hammond Defendants do not immediately enter a judgment of forfeiture when bonded persons fail to appear and, thus, fail to transfer forfeited bond money to the State's Common School Fund as required by IC 35–33–8–7(2)(e). Smith sought attorney fees and equitable relief for all three counts, and also requested money damages for the first two counts.") (footnote and citations omitted).

11. In this federal case, Smith filed a 42 U.S.C. § 1983 action against Hammond officials "and the City itself, contending that the defendants have a policy of refusing to accept surety bonds and that this policy violates the U.S. Constitution by depriving Smith of a property interest consisting of his license." *Smith IV,* 388 F.3d at 306. Smith appealed "from the denial of his motion for preliminary injunction, which he sought on the ground that damages will be difficult to determine and that therefore he is incurring irreparable harm." *Id.* The Seventh Circuit affirmed the district court and stated, "in view of the plainly meritless character of the underlying suit we suggest that the district judge dismiss it without further ado." *Id.* at 308.

quested the imposition of sanctions to "put an end to Smith's abuse of the judicial system." The trial court entered its order granting summary judgment on July 8, 2005, but made no mention of sanctions. Since that date, the Seventh Circuit has imposed sanctions on Smith's attorney, Douglas M. Grimes, for filing a frivolous appeal before the Seventh Circuit. Likewise, in an unpublished memorandum decision, dated September 23, 2005, our Court gave "fair warning to Smith and his counsel that this Court may well accept a future invitation [to grant sanctions] should they persist in playing variations on this same theme." *Finlon v. Golec,* No. 45A03–0503–CV–123, 835 N.E.2d 230, slip op. at 11 [835 N.E.2d 230] (Ind.Ct. App. Sept. 23, 2005).[12] Because these decisions were reached after the trial court's order, we remand to the trial court to determine whether, considering the issues raised and the timing of the appeals, sanctions are now warranted in this case.

*Id.* at 340–41 (some citations omitted) (second brackets in *Smith III* ).

There can be little doubt that Smith and his counsel are attempting to inflict the litigatory equivalent of death by a thousand cuts on the government officials and taxpayers of Lake County by mounting piecemeal challenges to the legislative scheme that allows criminal defendants to post a ten percent cash bond in lieu of patronizing Smith's bail bond establishment.[13] Appellees contend that Smith's "prosecution of this case at the trial level, and now the appellate level was and is frivolous, unreasonable or groundless" and request this Court "to order that sanctions are appropriate under the authority of I.C. 34–13–3–21, and remand this matter to the trial court to determine the appropriate amount of sanction [sic] warranted in this matter." Appellees' Br. at 19, 20. We note that Indiana Code Section 34–13–3–21 provides for attorney's fees in a tort action against a governmental entity and therefore is inapplicable here.

■ That said, Indiana Appellate Rule 66(E) provides that we "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." We have stated that "[i]n essence, damages should be assessed under this rule when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Montgomery v. Trisler,* 814 N.E.2d 682, 685 (Ind.Ct.App.2004). "However, we must use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect upon the exercise of the

---

12. The author of this opinion also wrote *Finlon,* in which we affirmed summary judgment against Smith in his declaratory judgment action regarding the substitution of bail by sureties for money or bonds pursuant to Indiana Code Section 27–10–2–15. Our supreme court denied Smith's petition for transfer in *Finlon* in April 2006.

13. As the Seventh Circuit's Judge Posner observed,

One wonders why [a criminal defendant's] family would pay Smith a nonre-fundable $680, when the same $680, deposited with the court, would (depending on the outcome of the criminal proceeding) be largely refundable. Because the family didn't know any better, perhaps being misled by Smith? Or did the family perhaps want Smith to be on the hook for the rest of the bond when [the defendant] skipped? But then, if Smith had the same thought about the likely outcome, he would not have agreed to underwrite a bond.

*Smith IV,* 388 F.3d at 306.

right to appeal." *Trost–Steffen v. Steffen*, 772 N.E.2d 500, 514 (Ind.Ct.App.2002), *trans. denied.*

When viewed in isolation, perhaps Smith's appeal from his unsuccessful attempt to relitigate the enforcement of Indiana Code Section 35–33–8.5–4 would not be considered sufficiently egregious to merit an award of damages pursuant to Appellate Rule 66(E). When viewed in the context of Smith's well-documented history of piecemeal attacks on Indiana's bail scheme, however, the instant appeal may fairly be characterized as harassing and vexatious. We therefore remand for a calculation of damages, including appellate attorneys' fees, to which Appellees may be entitled in accordance with Appellate Rule 66(E).[14]

Affirmed and remanded.

SULLIVAN, J., and SHARPNACK, J., concur.

14. In his reply brief, Smith makes an unsupported claim that "[i]f sanctions are imposed against [his] attorney it would constitute a violation of the attorney's rights under the First Amendment to the United States Constitution[.]" Appellant's Reply Br. at 8.